IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Wayne Hicks,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV-09-328-PHX-JWS (LOA)<br><br>**REPORT AND RECOMMENDATION** |

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (docket # 1) Respondents have filed an Answer, docket # 13, to which Petitioner has replied, docket # 16. For the reasons set forth below, the Petition should be denied.

**I. Factual and Procedural Background**

    **A. Charges, Trial, and Sentencing**

In November of 2003, Petitioner's adult daughter, Mandy Mullins, brought a notebook containing pornographic photographs of children to the Phoenix Police Department, stating that she had found the notebook in Petitioner's bedroom closet. (Respondents' Exh. A at 2-3) After the matter was referred to the City of Glendale Police Department, Detective Phillis Lawson obtained a search warrant for Petitioner's home. The Officers who conducted the search found numerous pornographic photographs of children, including the six photographs which formed the basis of the charges against Petitioner. (Respondents' Exh. A) Based on the photographs, on April 1, 2004, the State of Arizona charged Petitioner with six counts of sexual exploitation of a minor by knowingly

possessing a visual depiction in which a minor under 15 was engaged in exploitive exhibition or other sexual conduct in violation of A.R.S. § 13-3553. (Respondents' Exhs. A, Exh. F, item 1)

Petitioner's case proceeded to trial.[1] (Respondents' Exh. A) The State offered evidence that Petitioner's fingerprints were on two of the photographs. (Respondents' Exh. A at 3) The State also presented the testimony of Dr. Lisa Kirsch, a pediatrician specializing in child abuse cases. (Respondents' Exh. A at 3) Dr. Kirsch testified that, except for the person depicted in the photograph related to Count 4, the children in the other five photographs appeared to be under fifteen years old. (*Id.*) Petitioner's theory of defense was that his daughter, Mandy Mullins, planted the photographs in his closet. In support of this theory, Petitioner relied on the testimony of Detective Lawson that she found Petitioner's daughter, Mullins, not to be credible. (Respondents' Exh. A) Defendant also presented evidence that his daughter had a motive for inculpating him. Mullins was trying to transfer her welfare benefits from California to Arizona and needed to prove residency in Arizona. Mullins asked Petitioner to sign a lease agreement and charge her rent. Petitioner refused. Petitioner also presented witnesses who testified that Mullins, who was homeless and unemployed, wanted Petitioner's house and assets. (Respondents' Exh. A at 4-5) Petitioner also presented testimony of family friends stating that they had never seen child pornography in Petitioner's house. (Respondents' Exh. A)

On Petitioner's motion, the State struck the "under-fifteen" allegation on Count Four. (Respondents' Exh. A at 5) A jury acquitted Petitioner of Count Four, but found him guilty of the remaining counts. (Respondents' Exh. A at 5; Exh. F at 3) The court sentenced Petitioner to consecutive, mitigated 10-year prison terms on four counts of conviction, and to lifetime probation on the fifth count of conviction. (Respondents' Exh. A; Exh. F at 3)

**B. Direct Appeal**

---

[1] The Honorable Jeffery A. Hotham presided.

- 2 -

1  Petitioner timely filed a direct appeal arguing that the trial court erred in
conditionally ruling that the State would be permitted to introduce other-act or impeachment
evidence against Petitioner if he testified. (Respondents' Exhs. A, B) On December 20,
2005, the Arizona Court of Appeals rejected Petitioner's claims and affirmed his convictions
and sentences. (Respondents' Exh. A) Petitioner sought review in the Arizona Supreme
Court which was denied on July 20, 2006. (Respondents' Exh. D)

### C. Post-Conviction Proceeding

On August 29, 2006, Petitioner filed a notice of post-conviction relief pursuant to
Ariz.R.Crim.P. 32. (Respondents' Exh. E) Petitioner, through counsel, subsequently filed a
petition for post-conviction relief, arguing that the evidence was insufficient to support his
convictions because, although the jury had found that the children depicted in the
photographs were actual (rather than computer-generated) persons, the State had not
introduced evidence affirmatively disproving that the photographs had been computer-
generated or otherwise altered or manipulated. (Respondents' Exh. F at 7-12; Exh. G)
Petitioner further argued that the evidence was insufficient because the State failed to
affirmatively prove that Petitioner knew the photographs depicted "actual minor children."
(Respondents' Exh. F at 8, 15) In addition, Petitioner asserted that trial counsel was
ineffective for failing to challenge the sufficiency of the State's evidence, and that appellate
counsel was ineffective for failing to challenge the sufficiency of the evidence on direct
appeal. (Respondents' Exh. F at 12-13) Petitioner also argued that counsel was ineffective
for failing to ensure that the jury was properly instructed that the State must prove beyond a
reasonable doubt that Petitioner "knew the material was produced with the use of a minor,
that minor being an actual child." (Respondents' Exh. F at 15-16) Petitioner further
claimed that appellate counsel was ineffective for failing to raise this jury instruction issue
on appeal. (*Id.*)

The trial court found Petitioner's challenge to the sufficiency of the evidence
procedurally defaulted. (Respondents' Exh. H); *See* Ariz.R.Crim.P. 32.2(a)(3) (stating that
"[a] defendant shall be precluded from relief under this rule based upon any ground .. . [t]hat

has been waived at trial, on appeal, or in any previous collateral proceeding.") The court further found that Petitioner's claims of ineffective assistance of trial and appellate counsel lacked merit. (Respondents' Exh. H) Petitioner sought review in the Arizona Court of Appeals which was denied on May 14, 2008. (Respondents' Exh. I)

### D. Petition for Writ of Habeas Corpus

On February 17, 2009, Petitioner filed the pending Petition for Writ of Habeas Corpus raising the following claims:

> **Ground One:** The State failed to prove that the individuals depicted in the images where actual children. The images maintain first Amendment protection unless the individuals were actual children.
>
> **Ground Two:** The State failed to produce any evidence that Petitioner knew the material was produced with the use of minor children.
>
> **Ground Three:** Trial counsel was ineffective for failing to "demand proof beyond a reasonable doubt" that the photographs depicted real children, as opposed to computer-generated or manipulated images.
>
> **Ground Four:** Appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on appeal.[2]

(docket # 1 at 6-9)

Respondents concede that the Petition is timely filed within the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1). (docket # 13 at 5)

## II. Exhaustion and Procedural Bar

Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state prisoner's application for a writ of habeas corpus, the prisoner must have exhausted, in state court, every claim raised in his petition. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust state remedies, the prisoner must have afforded the state courts the

---

[2] In his Reply, Petitioner raises new claims that trial counsel was ineffective for failing to ensure that the jury was adequately instructed on all elements of the offense, and that appellate counsel was ineffective for failing to challenge the jury instructions on appeal. (docket # 16 at 11) Petitioner cannot properly assert additional claims for relief in his Reply. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994) (district court need not consider habeas claim raised for the first time in traverse), Thus, the Court declines to address new arguments raised by Petitioner in his Reply.

- 4 -

opportunity to rule upon the merits of his federal constitutional claims by "fairly presenting" them to the state courts in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim.").

It is not enough that all of the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised. *Reese*, 541 U.S. at 28 (stating that a reference to ineffective assistance of counsel does not alert the court to federal nature of the claim). Rather, the habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Similarly, a mere reference to the "Constitution of the United States" does not preserve a claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the petition or brief filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27.

Where a prisoner fails to "fairly present" a claim to the State courts in a procedurally appropriate manner, state court remedies may, nonetheless, be "exhausted." This type of exhaustion is often referred to as "procedural default" or "procedural bar." *Ylst*

*v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 731-32. There are two categories of procedural default.

First, a state court may have applied a procedural bar when the prisoner attempted to raise the claim in state court. *Nunnemaker*, 501 U.S. at 802-05. If the state court also addressed the merits of the underlying federal claim, the "alternative" ruling does not vitiate the independent state procedural bar. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance of counsel claims "barred under state law," but also discussed and rejected the claims on the merits, *en banc* court held that the "on-the-merits" discussion was an "alternative ruling" and the claims were procedurally defaulted and barred from federal review). A higher court's subsequent summary denial of review affirms the lower court's application of a procedural bar. *Nunnemaker*, 501 U.S. at 803.

Second, the state prisoner may not have presented the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state court would be "futile." *Teague v. Lane*, 489 U.S. 288, 297-99 (1989). Generally, any claim not previously presented to the Arizona courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust a current habeas claim would be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time barred. *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v.*

- 6 -

*Haley*, 541 U.S. 386, 393-94, (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish cause, a petitioner must establish that some objective factor external to the defense impeded her efforts to comply with the state's procedural rules. *Id.* The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.* To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). Where petitioner fails to establish cause, the court need not reach the prejudice prong. To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

### A. Application of Law to Petitioner's Claims

Respondents assert that Petitioner did not properly exhaust Grounds One and Two, and that those claims are technically exhausted and procedurally barred from federal habeas corpus review. (docket # 13 at 6)

In Grounds One and Two, Petitioner challenges the sufficiency of the evidence. (docket # 1 at 6-7; docket # 16 at 9-10) Petitioner attempted to raise these same claims on post-conviction review. The State court found Petitioner's challenge to the sufficiency of the evidence precluded. (Respondents' Exh. H) Petitioner appealed and the appellate court summarily affirmed the trial court's denial of Petitioner's petition for post-conviction relief. (Respondents' Exh. I) The appellate court's summary denial affirms the trial court's application of a procedural bar. *Nunnemaker*, 501 U.S. at 803.

By virtue of the state court's application of a procedural bar to Petitioner's claims raised in Grounds One and Two, those claims are technically exhausted and procedurally barred. *Nunnemaker*, 501 U.S. at 802-05; *Correll v. Stewart*, 137 F.3d 1404, 1417-18 (9th Cir. 1998) (stating that petitioner's federal claim is procedurally barred under

the independent and adequate state-ground doctrine, which forecloses federal habeas review when a state court has found a prisoner's federal claim precluded because the prisoner failed to meet a state procedural requirement.). Thus, Grounds One and Two are not subject to federal habeas corpus review unless Petitioner establishes cause and prejudice or a fundamental miscarriage of justice.

### B. "Cause and Prejudice" or "Fundamental Miscarriage of Justice"

#### 1. Cause and Prejudice

Proof of cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded" his compliance with the state rule. *Dretke*, 541 U.S. at 393-94. In this case, Petitioner does not assert any basis sufficient to overcome the procedural bar. Petitioner's *pro se* status and ignorance of the law do not satisfy the cause standard. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986); *Kibler v. Walters*, 220 F.3d 1151, 1153 (9th Cir. 2000).

#### 2. Fundamental Miscarriage of Justice

Additionally, Petitioner has not established that failure to consider Grounds One and Two will result in a fundamental miscarriage of justice. "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon* v. *Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup v. Delo*, 513 U.S. 208, 324 (1995)). "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Id.* at 559 (1998) (quoting *Schlup*, 513 U.S. at 324). The Supreme Court has explained that:

> The meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, *in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt*.

*Schlup*, 513 U.S. at 329 (emphasis added); *see also Lorensten v. Hood*, 223 F.3d 950, 954 (9th Cir. 2000) ("Petitioner bears the burden of proof on this issue by a preponderance of the evidence, and he must show not just that the evidence against him was weak, but that it was so weak that no reasonable juror would have convicted him."). To establish a claim of actual innocence, petitioner must demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). The "actual innocence" exception is narrow and "claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324. *See also Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002)("The Supreme Court has stressed the narrow scope of the actual innocence exception . . . .")

Petitioner does not establish that failure to consider Grounds One and Two will result in a fundamental miscarriage of justice. Petitioner has not shown that, in view of new evidence, it more likely than not that no reasonable juror would have convicted Petitioner in light of any new evidence. *Calderon*, 523 U.S. at 559. Accordingly, Petitioner fails to establish that failure to consider his procedurally defaulted claims will result in a fundamental miscarriage of justice.

Because Petitioner has not established any basis to overcome the procedural bar to his defaulted claims, the Court will not reach the merits of Grounds One and Two. The Court will consider Petitioner's remaining claims after discussing the standard of review.

### III. Standard of Review

Under the AEDPA, a state prisoner "whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 638 (2003). Thus, a state prisoner is not entitled to relief unless he demonstrates that the state court's adjudication of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2); *Carey*

*v. Musladin*, 549 U.S. 70 (2006); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006). To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts must look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Mitchell v. Esparza*, 540 U.S. 12, 15-15 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

Thus, a federal court cannot reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Even if the state court neither explained its ruling nor cites United States Supreme Court authority, the reviewing federal court must examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Early v. Packer*, 537 U.S. 3, 8 (2003). The United States Supreme Court has expressly held that citation to federal law is not required and that compliance with the habeas statute "does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*.

A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003)(citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

A state court decision involves an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies the rule to the facts of a particular case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of state law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable.") "It is not enough that a federal habeas

court, in its independent review of the legal question," is left with the "firm conviction" that the state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75. Rather, the petitioner must establish that the state court decision is "objectively unreasonable." *Middleton v. McNeil*, 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

Additionally, a state court's factual determinations "shall be presumed to be correct," on federal habeas review, and Petitioner can overcome that presumption only by "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir. 2000). The burden placed on petitioner is considerable because "this standard means that the federal habeas court must 'more than simply disagree' with the state fact-finding." *Washington v. Schriver*, 255 F.3d 45, 55 (2nd Cir. 2001) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983)).

Where a state court decision is deemed to be "contrary to" or an "unreasonable application of" clearly established federal law, the reviewing court must next determine whether it resulted in constitutional error. *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002). Habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

**IV. Analysis**

The record reflects, and Respondents concede, that Petitioner properly exhausted state remedies as to Grounds Three and Four by presenting those claims to the state courts in a procedurally proper manner. (docket # 13 at 6) As discussed below, however, Petitioner is not entitled to habeas corpus relief on his claims of ineffective assistance of counsel.

**A. Controlling Law**

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner. *Strickland*, 466 U.S. at 687; *Hart v. Gomez*, 174 F.3d

1067, 1069 (9th Cir. 1999). To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998). Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

To establish a Sixth Amendment violation, petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance. *Strickland*, 466 U.S. at 691-92; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) (stating that "a violation of the Sixth Amendment right to effective representation is not 'complete' until the defendant is prejudiced.") To show prejudice, petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Hart*, 174 F.3d at 1069; *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998). The court may proceed directly to the prejudice prong. *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 697). The court, however, may not assume prejudice solely from counsel's allegedly deficient performance. *Jackson*, 211 F.3d at 1155.

**B. Ground Three**

In Ground Three, Petitioner claims that trial counsel was ineffective for failing to demand proof beyond a reasonable doubt that the images at issue depicted real children as opposed to computer-generated images. (docket # 1 at 8) Respondents construe Petitioner's

claim as challenging the State's failure to provide expert testimony establishing that the photographs depicted real children, rather than images that had been computer-generated or otherwise altered or manipulated. (docket # 13)  In his Reply, Petitioner states that he "never stated that it was incumbent upon the State to provide expert testimony, only that some evidence [must have been] introduced" to establish that the images depicted actual minor children. (docket # 16 at 10)  Petitioner raised this claim on post-conviction review and the State court rejected it. (Respondents' Exh. F, H, I)  The State court applied the correct legal standard, *Strickland*, to Petitioner's claim of ineffective assistance of counsel and Petitioner has not established that its decision was based on an unreasonable determination of the facts, or was either contrary to, or an unreasonable application of, *Strickland*.  28 U.S.C. § 2254(d)  Accordingly, Petitioner is not entitled to habeas corpus relief on Ground Three.

Petitioner was indicted on multiple counts of sexual exploitation of a minor, each a class 2 felony and dangerous crime against children, committed in November 2003.  Each count involved possession of visual depictions of a minor engaged in exploitive exhibition or other sexual conduct, in violation of A.R.S. § 13-3553.  At the time of Petitioner's conviction, Arizona Revised Statute § 13-3553 provided, in pertinent part, that:

> A.  A person commits sexual exploitation of a minor by knowingly:
>
> * * *
>
> 2.  Distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct.
>
> * * *
>
> C.  Sexual exploitation of a minor is a class 2 felony and if the minor is under fifteen years of age it is punishable pursuant to § 13-604.01.

A.R.S. § 13-3553 (West 2003).  Also, at the time of Petitioner's conviction, A.R.S. § 13-105(26) defined "person" as a "human being."  A.R.S. § 13-3551(5) defined "minor" as "a person or persons who were under eighteen years of age at the time a visual depiction was

- 13 -

created, adapted, or modified." *Id*. (West 2003). The photographs upon which Petitioner's convictions were based were discovered in 2003, and therefore, were necessarily taken and developed with the technology that existed before or during their discovery in 2003. Petitioner claims that counsel was ineffective for failing to demand that the State offer evidence that the photographs depicted real children, as opposed to computer-generated images.

Petitioner's argument stems from the possibility in this age of technology that, rather than creating images of real children, pornographers can alter images or create computer-generated images. Such images — as well as sexually explicit images of individuals who appear to be minors but are not - are protected by the First Amendment. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244-45 (2002) (stating that "[i]t is well established that speech may not be prohibited because it concerns subjects offending our sensibilities."). The United States Supreme Court has held that the federal statute which included the possession of virtual child pornography within the scope of prohibited conduct was unconstitutional as violative of the First Amendment. 535 U.S. at 245-46 (invalidating 18 U.S.C. § 2256(8)(B). The Court found that because the federal statute did not distinguish between pornography depicting actual children from photographs of "virtual child pornography," it "prohibit[ed] speech that records no crime and creates no victim in its production." 535 U.S. at 250-51.

Unlike the federal statute invalidated by the Supreme Court, the Arizona Statute at issue requires that prohibited visual depictions show actual minor children. *See*, A.R.S. § 13-3553, §13-13-3551; *State v. Hazlett*, 205 Ariz. 523, 73 P.3d 1258 (Ariz. Ct. App. 2003) (explaining that A.R.S. § 13-3553 was limited to visual depictions of "actual minors" actually engaged in real or simulated exploitive exhibition or sexual conduct.). Thus, the First Amendment issue to which Petitioner alludes is not present in this case.

Moreover, to satisfy its burden under A.R.S. § 13-3553, the State could rely on the visual depictions themselves, without introducing additional evidence regarding those

images. Although Petitioner asserts that he never "stated that it was incumbent upon the State to provide expert testimony," docket # 16 at 10, he does not explain what type of evidence the State should have introduced to establish that the visual depictions showed actual children. Respondents correctly argue that the State was not required to produce expert testimony that the visual depictions were pictures of actual children, rather than virtual images. The Supreme Court has never imposed such an expert-witness requirement in the case of photographic evidence. Additionally, the federal circuit courts that have addressed the issue have found no such requirement. *See United States v. Rodriguez-Pacheco*, 475 F.3d 434, 441 (1st Cir. 2007) (noting that courts "universally accept the proposition that juries are capable of distinguishing between real and virtual images, without expert assistance"); *United States v. Irving*, 452 F.3d 110, 121 (2nd Cir. 2006); *United States v. Slanina*, 359 F.3d 356, 357 (5th Cir. 2004) (finding no expert testimony required to prove "real children" factor; trier of fact could examine evidence to determine if government satisfied its burden); *United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir. 2003); *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003) (upholding "jury's conclusion that real children were depicted even where the images themselves were the only evidence the government presented on the subject."). These courts reasoned that the jury that views the photographs can "draw its own independent conclusion as to whether real children were depicted." *U.S. v. Vig*, 167 F.3d 443, 449 (9th Cir. 1999). Because the State was not required to present expert testimony or other evidence to establish that the photographs were not computer-generated or manipulated, counsel was not ineffective for failing to challenge the State's failure to offer expert testimony or additional evidence on that issue.

Likewise, trial counsel was not ineffective for failing to offer a defense expert's evaluation of the photographs. Defense counsel has a "duty to make reasonable investigations or to make reasonable decisions that make particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This includes a duty to investigate the defendants's 'most important defense,' . . . and a duty adequately to investigate and

- 15 -

introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence on the verdict . . . ." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (citations omitted). Here, defense counsel made a strategic decision not proffer a defense based on the intrinsic character and nature of the photographs. Petitioner has not shown that trial counsel's decision was deficient performance. *See Harris v. Pulley*, 885 F.2d 1354, 1368 (9th Cir. 1989) (concluding that petitioner, who had the burden of proof, failed to "overcome the 'strong presumption' that [defense] counsel's failure to introduce the 1971 EEG results . . . fell within the 'wide range of reasonable professional assistance.'" And concluding that "[b]ecause it is possible that the failure to introduce the abnormal EEG results was a difficult but thoughtful tactical decision, we must presume that counsel's conduct was within the range of competency."). Rather than challenging the character of the photographs, counsel presented a third-party culpability defense that Petitioner's daughter downloaded the photographs from the internet, and planted them in Petitioner's bedroom to inculpate him. Counsel presented evidence of the daughter's motive, including her desire to assume control of Petitioner's home and possessions, and her anger that Petitioner would not help her obtain welfare benefits. An alternative focus on the photographs themselves, or Petitioner's perceptions of them, would have detracted from that defense. *See Gilson v. Sirmons*, 520 F.3d 1196, 1247 (10th Cir. 2008) (stating that for trial counsel to have "raised any type of mental disorder defense would have been inconsistent with a defense of actual innocence and would have considerably weakened both defenses. Counsel's decision in this case was reasonable trial strategy, which we will not second guess on appeal.").

Moreover, Petitioner has not shown that he was prejudiced as a result of his defense attorney's failure to demand evidence that the photographs depicted real children. Petitioner has not made any showing that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. Petitioner has not provided evidence of any particular expert or other witness that would have testified

- 16 -

regarding the visual depictions, or the content of such testimony. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative . . . . In addition, for [petitioner] to demonstrate the requisite *Strickland* prejudice, [he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (citations omitted); *see also United States v. Hardin*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (rejecting claim of ineffective assistance based on counsels' failure to call a witness who would have taken responsibility for a gun found in defendant's possession because, *inter alia*, "[t]here is no evidence in the record which establishes that Washington would testify in [petitioner's] trial.").

Petitioner has not presented any evidence indicating that an expert or other witness was available to testify at his trial regarding whether the images at issue depicted real children as opposed to computer-generated images. Moreover, Petitioner has not established any prejudice as a result of counsel's failure to call an expert or other witness to testify regarding the photographs, because he has not offered the substance of such purported testimony. In view of the foregoing, Petitioner's claim of ineffective assistance of counsel asserted in Ground Three does not warrant habeas corpus relief.

**C. Ground Four**

In Ground Four Petitioner argues that appellate counsel was ineffective for failing to raise the issue of sufficiency of the evidence on direct appeal. Petitioner also asserts that appellate counsel raised a single "weak issue" instead of raising the "stronger" issues that were raised on post-conviction review. (docket # 1 at 9)

In challenges to the effective assistance of appellate counsel, the same standards apply as with the claims of ineffective assistance of trial counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Smith v. Murray*, 477 U.S. 527 (1986). In *Smith*, the United States Supreme Court indicated that an appellate attorney filing a merits brief need not and should not raise every non-frivolous claim. *Robbins*, 528 U.S. at 288. Rather, an attorney may select from

1  among them in order to maximize the likelihood of success on appeal. *Id*. As a result, there
2  is no requirement that an appellate attorney raise issues that are clearly untenable. *Gustave v.*
3  *United States*, 627 F.2d 901, 906 (9th Cir.1980). As such, counsel may have to make
4  strategic choices regarding which claims to raise and which to ignore.

5  Petitioner's claim of ineffective assistance of appellate counsel is vague and
6  conclusory. Petitioner appears to challenge appellate counsel's failure to challenge the
7  sufficiency of the evidence concerning whether the photographs depicted real children.

8  As discussed previously in connection with Ground Three, this argument lacks
9  merit. The State was not required to offer expert or other evidence that the children in the
10 photographs were real. Rather, the jury was able to view the photographs and determine
11 whether they depicted real children, as opposed to computer-generated images. *See United*
12 *States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003) (upholding "jury's conclusion that real
13 children were depicted even where the images themselves were the only evidence the
14 government presented on the subject."). Additionally, the pediatrician called by the State
15 testified that, based on her training and experience and the bodily development and
16 characteristics she saw in all but one of the photographs, the children depicted therein were
17 less than 15 years of age. (Respondents' Exh. G at 18; citing Tr. 9/15/04 at 81-93). The
18 jury viewed the pictures and considered the testimony, including that of the pediatrician.
19 Petitioner has not shown that appellate counsel was deficient for failing to challenge the
20 sufficiency of the evidence. Additionally, Petitioner has not shown that, but for appellate
21 counsel's failure to raise that issue on appeal, the outcome of that proceeding would have
22 been different. Because Petitioner has failed to prove either prong of the *Strickland* test, his
23 ineffective assistance of appellate counsel claims fail.

**V. Conclusion**

25 Based on the foregoing, the Court finds that the Petition should be denied
26 because Petitioner's claims are either procedurally defaulted or fail on the merits.
27 Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (docket # 1) be **DENIED.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 6th day of October, 2009.

_____
Lawrence O. Anderson
United States Magistrate Judge